# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
# ℭ𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

| | |
|---|---|
| SEROP J. BEYLERIAN and AVEDIS SHANLIAN, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HILLSTONE RESTAURANT GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case № 2:20-CV-11580-ODW (RAOx)<br><br>**ORDER GRANTING MOTION TO REMAND [15] AND DENYING MOTION TO DISMISS [27], MOTION TO STRIKE [28], AND MOTION FOR RELIEF [38]** |

## I.     INTRODUCTION

Plaintiffs Serop J. Beylerian and Avedis Shanlian initiated this putative class action in state court against Defendant Hillstone Restaurant Group, Inc. ("Hillstone"). (Notice of Removal ("Notice") Ex. A ("Compl."), ECF No. 1.) Hillstone removed the action based on alleged diversity jurisdiction. (Notice ¶ 3.) Plaintiffs now move to remand on the grounds that Hillstone has not met its burden to establish an amount in controversy exceeding $75,000. (Mot. to Remand ("Motion" or "Mot."), ECF No. 15.) For the reasons below, the Court **GRANTS**[1] the Motion.

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.  BACKGROUND

Plaintiffs are patrons of Hillstone's restaurants, namely South Beverly Grill in Beverly Hills, California and Houston's in Pasadena, California.  (Compl. ¶¶ 40–41.) Plaintiffs allege that Hillstone raised the cost of take-out food items at its restaurants and "added a 10% to 15% . . . 'service and packaging fee' to its takeout sales" during the COVID-19 state of emergency.  (*Id.* ¶¶ 6, 30–32.)  As a result, Beylerian and Shanlian claim they were unlawfully overcharged $22.30 at South Beverly Grill and $23.50 at Houston's, respectively.  (*See* Compl. ¶¶ 39–41, Exs. A–B; Mot. 5–6.)

Based on these allegations, Plaintiffs commenced this putative class action against Hillstone for: (1) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, *et seq.*; (2) negligence; and (3) unjust enrichment.  (*See* Compl. ¶¶ 54–90.)[2]  Plaintiffs seek relief in the form of monetary damages, punitive damages, disgorgement, restitution, injunctive relief, declaratory relief, and attorney fees and costs.  (*Id.*, Prayer.)  Hillstone removed the action to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a).  (*See* Notice ¶¶ 3–4.)  Plaintiffs now move to remand.  (*See generally* Mot.)

## III.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A suit filed in a state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity of citizenship among the adverse

---

[2] Although Plaintiffs have filed a First Amended Complaint ("FAC"), (ECF No. 22), the Court looks to the face of the complaint at the time of removal to determine whether diversity jurisdiction is satisfied, *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985).

parties and an amount in controversy exceeding $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

When a defendant removes based on diversity jurisdiction, the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Where, as here, a defendant's amount in controversy assertion is challenged, "[e]vidence establishing the amount is required" and "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88–89.

Courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Id.*

## IV. DISCUSSION

Hillstone invokes diversity jurisdiction under 28 U.S.C. § 1332(a) as the basis for removal.[3] (Notice ¶¶ 3–4.) For this reason, the traditional diversity jurisdiction requirements of § 1332(a) apply. *See ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108, 1117 (9th Cir. 2000) (explaining that a notice of removal must include all grounds for removal and may not be amended to add an additional basis for removal after thirty days have passed). The parties do not dispute complete diversity.[4] (Notice ¶ 4; *see* Reply 3 n.3, ECF No. 21.) Accordingly, the only issue before the Court is whether the amount in controversy exceeds $75,000.

---

[3] As Plaintiffs correctly note, Hillstone does not rely on the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") in its Notice of Removal. (Mot. 1; *see* Notice ¶¶ 3–4; Opp'n 6, ECF No. 19.)
[4] As complete diversity is not in dispute, the Court **DENIES** Plaintiffs' request for judicial notice because the proffered documents do not affect the disposition of the Motion. (*See* Req. Judicial Notice, ECF No. 15-3); *see also Bichindaritz v. Univ. of Wash.*, 550 F. App'x 412, 413 (9th Cir. 2013) (denying request for judicial notice because "the subject of [the] notice [wa]s unnecessary to the resolution of the issues").

Hillstone asserts that the amount in controversy is met in two ways. First, Hillstone contends that Plaintiffs' request for disgorgement of "ill-gotten" surcharge fees exceeds $75,000 across its California restaurants. (Opp'n 10–13; Decl. of R. Scott Ashby ("Ashby Decl.") ¶ 11, ECF No. 19-2.) Second, Hillstone claims the cost of compliance with Plaintiffs' requested injunction requiring Hillstone to "permanently cease" the alleged price gouging also exceeds $75,000.[5] (Opp'n 14–19; Ashby Decl. ¶ 12.) Plaintiffs argue that neither of Hillstone's contentions has merit. (*See* Mot. 10, 16.) Plaintiffs are correct.

## A.  Disgorgement

Plaintiffs seek disgorgement of "ill-gotten gains" that Hillstone acquired through its alleged increased food prices and 10–15% surcharge fees. (Compl., Prayer ¶ 5.) Hillstone asserts that disgorgement of the surcharge profits meets the jurisdictional minimum because, when aggregated across its California restaurants, "the actual fees recovered . . . are well above" $75,000. (Opp'n 11.) Hillstone supports this vague statement with only the conclusory assertion of R. Scott Ashby, Hillstone's Executive Vice President, that Hillstone's California locations "collect[] [surcharge] fees of, on average, slightly under $200,000 per month." (Ashby Decl. ¶ 11.) Hillstone does not substantiate this figure with any records or financial statements, and expressly declines to provide specific numbers. (*See id.*; Opp'n 11 n.1.) Without corroborating support, Ashby's declaration is speculative and self-serving, and falls short of the type of evidence required to establish the jurisdictional amount on removal. *See Dart Cherokee*, 574 U.S. at 88–89; *Farley v. Dolgen Cal., LLC*, No. 2:16-CV-02501-KJM (EFBx), 2017 WL 3406096, at *5

---

[5] Hillstone does not argue or provide evidence in its opposition regarding Plaintiffs' other categories of damages, including attorney fees or punitive damages; thus, any such arguments are waived. *See Heraldez v. Bayview Loan Servicing, LLC*, No. CV 16-1978-R, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016) ("Failure to oppose constitutes waiver or abandonment of the issue."), *aff'd* 719 F. App'x 663 (9th Cir. 2018). Alternatively, Hillstone has failed to show these damages satisfy the amount in controversy by a preponderance of the evidence. *See Dart Cherokee*, 574 U.S. at 88–89.

(E.D. Cal. Aug. 9, 2017) ("Without corroborating documents, [the] declaration . . . is speculative and self-serving.").

Regardless, Hillstone may not aggregate disgorgement of its surcharge fees under traditional diversity jurisdiction. To determine the amount in controversy in diversity class actions, courts examine "only the claims of named class plaintiffs." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 941 (9th Cir. 2001). Under traditional diversity jurisdiction, the "anti-aggregation rule" applies such that "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). Aggregation of multiple claims is "permissible only . . . in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Gibson*, 261 F.3d at 943. Likewise, in the disgorgement context, "the total disgorgement amount requested cannot be used to satisfy the jurisdictional amount requirement" if "the consolidated plaintiffs have no common and undivided interest." *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 962 (9th Cir. 2001) (finding that defendants could not aggregate disgorgement because plaintiffs' claims arose from individual purchases); *see also Bakken v. State Farm Ins. Co.*, 87 F. App'x 674, 674–75 (9th Cir. 2004) (finding aggregation of disgorgement improper where plaintiffs' claims arose from deductions on individual insurance policies).

Here, Plaintiffs' claims are "separate and distinct" and do not share "a common and undivided interest." *Gibson*, 261 F.3d at 943. Beylerian sues for $22.30 on a single purchase at South Beverly Grill, and Shanlian sues for $23.50 on a separate transaction at Houston's. (*See* Compl. ¶¶ 39–41, Exs. A–B; Mot. 5–6.) The claims thus arise from unrelated, individually cognizable transactions. *See, e.g.*, *In re Ford*, 264 F.3d at 959 (finding aggregation improper based on absence of "common and undivided interest . . . [where] each plaintiff charged purchases and accrued rebates individually, not as a group"). Therefore, the anti-aggregation rule applies and Hillstone may not aggregate the total surcharge profits of all its California restaurants

to calculate the disgorgement for amount in controversy. *Bakken*, 87 F. App'x at 675 (emphasis added) (citing *In re Ford*, 264 F.3d at 962) ("[D]isgorgement . . . may be counted toward the amount-in-controversy only to the extent of the value of [the] *individual's* claim."); *see also Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038–39 (C.D. Cal. 2006) ("Disgorgement of profits is available under the UCL only to the extent that it is restitutionary.").

As Hillstone's disgorgement argument relies entirely on aggregation of its total surcharge profits, (*see* Opp'n 10–13), Hillstone fails to establish that disgorgement satisfies the jurisdictional amount requirement.

**B.    Injunctive Relief**

Hillstone next argues that the cost to Hillstone of complying with Plaintiffs' requested injunction to "permanently cease" the alleged price gouging exceeds $75,000. (Opp'n 14; *see* Compl. ¶ 67.) Hillstone contends compliance with the requested injunction will require it to create new menus and reduce prices across all its California restaurants, thereby causing lost revenue and possibly closure of restaurant locations. (Opp'n 15–19.)

First, Hillstone's argument here suffers from the same evidentiary deficiency as above. Hillstone again relies solely on Ashby's declaration, which provides that *if* Hillstone decides to continue the take-out food program, it would need to "recreate its menus," and "the combined costs of the[] changes across Hillstone's operational California locations [would] easily exceed $75,000." (Ashby Decl. ¶ 12.) Equally speculative and conclusory, Ashby states that *if* Hillstone decides to close locations, it would incur significant costs, including the value of lost inventory and continuing rent obligations. (*Id.* ¶ 13 ("*[I]f* on-premises dining remains prohibited . . . and *if* those restaurants [are subject to an injunction], Hillstone *may* decide to stop funding losses . . . ." (emphases added)).) As above, however, Hillstone does not substantiate any of these speculative costs. (*See id.* ¶¶ 12–13.) Ashby's speculative and

self-serving declaration again falls short. *See Dart Cherokee*, 574 U.S. at 88–89; *Farley*, 2017 WL 3406096, at *5.[6]

Moreover, similar to disgorgement, Hillstone may not aggregate the cost of injunctive compliance. Hillstone invokes the "either viewpoint" rule, which provides that the amount in controversy is the total pecuniary result to either party. (*See* Opp'n 14); *In re Ford*, 264 F.3d at 958. Under that rule, where a plaintiff's recovery is less than $75,000, the court may look to "the potential cost to the defendant of complying with the injunction." *In re Ford*, 264 F.3d at 958. However, in class actions, use of this rule is effectively "the same as aggregation." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 859 (9th Cir. 2001) (quoting *Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir. 1977)). And aggregation remains *unavailable* in traditional diversity class actions where jurisdiction is premised on 28 U.S.C. § 1332(a).[7] *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d. 1151, 1159 (C.D. Cal. 2013) (first citing *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013); and then citing *In re Ford*, 264 F.3d at 958–59) ("The 'either viewpoint' rule is not used in diversity class actions because it would subvert the anti-aggregation rule.").

As discussed above, the anti-aggregation rule applies here because Plaintiffs' claims are "separate and distinct," and do not share a "common and undivided" interest. *See Snyder*, 394 U.S. at 335; *Kanter*, 265 F.3d at 859. Therefore, Hillstone cannot aggregate the total cost of injunctive compliance to satisfy the amount in controversy. *See Snow*, 561 F.2d at 790; *see also Reisfelt v. Topco Assocs., LLC*, No. 8:20-CV-01283-JWH (ADSx), 2020 WL 6742879, at *3 (C.D. Cal. Nov. 16, 2020) (finding that *Snow* and *Kanter* foreclosed defendant's argument that its total cost of compliance could satisfy the amount in controversy in diversity class action).

---

[6] As Hillstone fails to sufficiently support its cost of injunctive compliance, the Court does not reach Hillstone's objections to Plaintiffs' evidence on the issue. (*See* Def.'s Objs., ECF No. 20.)

[7] In contrast, aggregation is expressly contemplated when jurisdiction is premised on CAFA. *See* 28 U.S.C. § 1332(d)(6).

In sum, Hillstone fails to meet its burden to establish that the amount in controversy exceeds $75,000. The Court therefore **GRANTS** Plaintiffs' Motion to Remand.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion to Remand. (ECF No. 15.) In light of the Court's conclusion that it lacks subject matter jurisdiction, the pending Motion to Dismiss (ECF No. 27), Motion to Strike (ECF No. 28), and Motion for Relief (ECF No. 38) are not for this Court to decide and are therefore **DENIED** without prejudice.

The Court **REMANDS** this action to the Superior Court of California, County of Los Angeles, Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, California, 90012. All dates and deadlines are **VACATED**. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

May 10, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**